Outcalt *v.* Durling.

JACOB OUTCALT *vs.* GARRET DURLING.

1. In an action of trespass, the general averment of property in the plaintiff, contained in the declaration, is sustained by proof of actual possession coupled with an interest, though the absolute property be in a third party.

2. If the replication, in an action of trespass, not only traverses the allegation of property in the defendant, contained in the plea, but avers the property to be in the plaintiff, the latter averment will be rejected as surplusage. It will not change the character of the issue, nor shift the burthen of proof upon the plaintiff.

3. The giving of a bond by the garnishee in attachment, conditioned for the safe keeping and delivery of the property attached, is no waiver of the garnishee's lien upon the property.

4. Where vindictive damages are not claimed, the measure of damages in trespass is compensation to the plaintiff for his loss.

5. A person having a lien upon goods, in an action of trespass against the owner, or those claiming under him, for the removal or destruction of the goods, recovers only to the extent of his lien.

6. In an action of trespass by a person having a qualified interest in personal property, a verdict for the plaintiff will not vest in the defendant the absolute ownership of the chattels. It will vest in him the right of the plaintiff in the property, and nothing more.

To an action of trespass *de bonis asportatis,* for taking and carrying away the plaintiff's horse, the defendant pleaded:

1st. The general issue.

2d. *Actio non,* &c. That before the time mentioned in said declaration, upon application made before Leonard

Bunn, one of the justices of the peace in the county of Somerset, by one Casimer Abos, to the effect that Thomas McCarty, a nonresident, was owing said Casimer Abos the sum of one hundred dollars, a writ of attachment was issued against effects, &c., of Thomas McCarty, and delivered to Garret Durling, defendant, one of the constables, &c., by virtue of which writ the defendant did seize upon, take, and attach a certain horse, the property of the said Thomas McCarty, being the said horse in said narr. mentioned, and did make a true inventory and appraisement, and return said writ, &c.; that judgment was given by said justice for said Casimer Abos against said Thomas McCarty, &c.; that a writ of execution, directed to defendant, constable, &c., was issued by said justice; that a certain horse, the property of the said Thomas McCarty, was in the building of said Jacob Outcalt, and that said defendant, constable, did seize and take in execution and lead away the said horse; that, as well at the time of levy, &c., of writ of attachment, as at time of levy, &c., of writ of execution, said horse was the horse and property of, and belonging to the said Thomas McCarty.

3d. *Actio non*, &c. That before said time when, &c., upon application made before James Taylor, one of the justices of the peace, &c., by one John T. Jenkins, to the effect that John S. Hubbard and the said Thomas McCarty, by name of Hubbard & McCarty, were indebted to said John T. Jenkins and one John G. Brokaw, by name of Jenkins & Brokaw, in the sum of $75.77, said Hubbard & McCarty being nonresidents, a certain other writ of attachment was issued against effects, &c., of Hubbard & McCarty, and delivered to defendant, constable, &c., by virtue of which, said defendant did seize upon and attach a certain horse, the property of said Hubbard and McCarty, and did make return of said writ, &c; that afterwards judgment was given by said James Taylor for said Jenkins & Brokaw against the said Hubbard &

McCarty for the sum of $75.77 ; that afterwards a writ of execution was issued directed to said Garret Durling, commanding, &c., that a certain horse, the property of the said Hubbard & McCarty, being the same horse in the said narr. mentioned, was in the building of said Outcalt, and that, by virtue of said writ, defendant did seize and take in execution the said horse, doing no unnecessary damage to said Jacob Outcalt; that, as well at time of levy of writ of attachment as at time of levy of writ of execution said horse was the property of said Hubbard & McCarty.

To the above pleas the plaintiff replied—

1st. Joinder in issue.

2. *Precludi non*, &c. ; because said horse, at the time when, &c., was not the property of the said Thomas McCarty, but of the plaintiff, in manner and form, &c.    Concluding to the country.

3d. *Precludi non*, &c. ; because said horse, at the time when, &c., was not the property of John S. Hubbard and Thomas McCarty, trading, &c., as Hubbard & McCarty, but of the plaintiff, in manner and form, &c.    Concluding to the country.

To which replication the defendant rejoined by adding *similiter*.

On the trial of the cause at the Middlesex Circuit, at May term, 1855, the plaintiff, in support of the issues joined on his part, offered evidence to prove that the horse was the property of Hubbard & McCarty, of the city of New York ; that, on the 17th of June, 1854, the horse was placed by his owners with the plaintiff, to be kept by him, and continued in his possession until the month of October following, when he was seized and taken out of the plaintiff's possession by the defendant, as the property of Hubbard & McCarty.    At the time the horse was left with the plaintiff, it was agreed by the owners that the horse should remain in the plaintiff's possession until he was paid for his keep, and if the bill was not paid, the horse should be the

plaintiff's.     The value of the horse was $175.     The plaintiff's claim for keeping him was $3 per week.

When the defendant came to attach the horse as the property of Hubbard & McCarty, the plaintiff claimed the property as his own; but upon the attachment being made, he gave bond, pursuant to the act, for the forthcoming of the property.

The plaintiff having rested his case, the court, on motion of the defendant, ordered a nonsuit.   On the coming in of the *postea*, a rule was granted to show cause why the nonsuit should not be set aside, and a new trial granted.

Argued, February term, 1856, before the CHIEF JUSTICE, and OGDEN, ELMER, and HAINES, Justices, by *Schenck*, for the motion, and *Blauvelt*, contra.

The opinion of the court was delivered by

The CHIEF JUSTICE.   The court have not been furnished with the opinion of the judge before whom this cause was tried, and are not apprized of the precise ground upon which the motion to nonsuit was granted.   The nonsuit is now sought to be sustained on several grounds.

1. Because there was no proof of the plaintiff's ownership of the chattel in controversy.   Special property, joined with the actual possession of personal chattels by the plaintiff, is sufficient to maintain trespass.     It is not necessary that the plaintiff should have the absolute ownership.   1 *Chit. Pl.* (*7th ed.*) 70, 195, 196 ; 2 *Saund. Pl. & Ev.* 878 ; 1 *Archb. N. P.* 366.   As against a wrongdoer, who takes the property out of the possession of the plaintiff without authority, a bare possession is sufficient to enable the plaintiff to recover in trespass.   *Demick* v. *Chapman*, 11 *Johns. R.* 132 ; *Hoyt* v. *Gelston*, 13 *Johns. R.* 141, 561 ; 1 *Archb. N. P.* 366.   The plaintiff offered evidence tending to show not an absolute ownership of the property in controversy, but a rightful possession, coupled with an actual interest

as to remuneration. The evidence, if believed by the jury, was sufficient to entitle the plaintiff to a verdict. The general averment of property in the plaintiff is sustained by proof of actual possession coupled with an interest, though the absolute property be in a third party.

2. It is insisted, however, that inasmuch as the replication not only traverses the allegation of property in the defendant in attachment, contained in the plea, but avers the property to be in the plaintiff, it was necessary, in support of the replication, to show absolute property in the plaintiff.

The defendant's pleas, except the general issue, are strictly special pleas in bar, confessing and avoiding the plaintiff's cause of action. They are not like the plea of property in replevin, a mere traverse of the declaration. The affirmative of the issues was not upon the plaintiff, but upon the defendant. The distinction between these pleas and the plea of property in replevin, and the grounds of that distinction, are clearly stated by Ch. Just. Hornblower, in *Chambers* v. *Hunt* (3 *Harr.* 341). The character of the issues was not changed, nor was the burthen of proof shifted by the averment contained in the replication, that the property was the property of the plaintiff. That allegation, though essential in the action of replevin, is irrelevant in trespass, and must be rejected as surplusage. The traverse is complete without it.

At common law, the plea of property in the defendant in an action of trespass was not used. The matter of the plea was given in evidence under the general issue. By the modern English practice, by rule of 4 William IV, want of property in the plaintiff must be specially pleaded. But this plea does not put in issue the question, whether the plaintiff is the absolute owner, but simply whether or not he had, at the time of the *tort*, such title to the goods in question as to enable him to maintain trespass for taking them. 1 *Archb. N. P.* 363–6.

Nor does the fact that the plaintiff, by his evidence, showed that the defendant in attachment had property in the goods liable to be attached, and that it was taken by virtue of the attachment, defeat the plaintiff's right of recovery. It was necessary that the evidence should go further, and show that the right acquired under the attachment was paramount to the plaintiff's right of property in the goods. The utmost effect of the evidence supposed would be to justify the service of the attachment upon the interest of the defendant in the property attached, and the enforcement of that attachment, subject to the plaintiff's right of lien. But it could not justify the converting and disposing of the property to the use of the defendant in derogation of the plaintiff's rights. An attachment will not divest the lien of the garnishee. *Serg. on At.* 90, 91.

3. The giving of the bond by the plaintiff to the constable, conditioned for the safe keeping and delivery of the property attached, was no waiver of the plaintiff's lien. If the attachment was duly served upon the property subject to the lien of the plaintiff, the bond may have been given without conflicting with the rights of the plaintiff. But if the bond was wrongfully demanded, and was given by the defendant to avoid being deprived of the possession of the property, it was no abandonment or waiver of his rights.

4. The question of damages can create no difficulty in the way of a recovery. The measure of damages in trespass is compensation to the plaintiff for his loss. *Hopple* v. *Higbee*, 3 *Zab.* 342. The plaintiff has no claim, beyond the amount of his lien, as against the owner of the goods or those claiming under him ; he recovers damages only to the extent of his interest. *Lyle* v. *Barker*, 5 *Binney* 457 ; *Ingersoll* v. *Van Bokkelin*, 7 *Cowen* 670, *S. C.;* 5 *Wend* 315 ; *Spoor* v. *Holland*, 8 *Wend.* 445 ; *Sedgwick on Dam.* 506. Nor will a verdict for the plaintiff, under the circumstances, vest the title of the horse absolutely in the defendant

in this action, to the prejudice of the rights of the absolute owner. The verdict will vest in the defendant the right of the plaintiff in the property, and nothing more. It will not interfere with the rights of third parties. The extent of the principle is, that in trover, or trespass *de bonis asportatis,* after judgment, the property ·cannot be claimed again by the plaintiff. *Brown* v. *Wootton, Cro. Jac.* 73; *Adams* v. *Broughton,* 2 *Stran.* 1078; *Wooley* v. *Carter,* 2 *Halst.* 88.

The nonsuit should be set aside, and a new trial granted.

OGDEN, ELMER, and HAINES, Justices, concurred.